**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**FREDERICK SMITH,**

          **Plaintiff,**

 vs.                 **9:18-CV-01066
                        (MAD/TWD)**

**C.O. S. DODGE,** *et al*,

          **Defendants.**

---

**APPEARANCES:**         **OF COUNSEL:**

**ASHER & ASSOCIATES, P.C.**    **ROBERTA D. ASHER, ESQ.**
111 John Street, 14th Floor
New York, New York 10038
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**    **KOSTAS D. LERIS, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Frederick Smith, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Eighth Amendment. *See* Dkt. No. 13.[1] Defendants, corrections officers employed by DOCCS, moved for summary judgment arguing that Plaintiff had failed to exhaust his administrative remedies before

---

[1] Plaintiff's original complaint was filed on September 6, 2018. *See* Dkt. No. 1. In a telephone conference with the Court, the parties agreed to Plaintiff filing an amended complaint. Plaintiff's amended complaint was filed on December 28, 2018, and is now the operative pleading. *See* Dkt. No. 13.

commencing this action in violation of the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 16.

## II. BACKGROUND

Plaintiff was an inmate at Great Meadow Correctional Facility ("Great Meadow") from May 19, 2015 to December 24, 2015. *See* Dkt. No. 23 at ¶ 11. Plaintiff alleges that on September 9, 2015, he was "stopped and frisked . . . by [D]efendants." Dkt. No. 13 at ¶ 10. During this interaction, Plaintiff alleges that he was "kicked, punched and stomped about the face, ribs and stomach by [D]efendants." *Id.* at ¶ 11. Further, Defendants allegedly "twisted" Plaintiff's "feet, arms, shoulders, hands and fingers." *Id.* at ¶ 12. Defendants then allegedly "handcuffed" Plaintiff and "continued to kick, punch, and stomp . . . [Plaintiff] about the face and body while he was restrained." *Id.* at ¶ 13. Plaintiff claims to have suffered "two black eyes, multiple abrasions and lacerations on his face and a collapsed lung." *Id.* at ¶ 14. These injuries were allegedly treated at two hospitals. *See id.* at ¶ 15.

The inmate grievance process is outlined in 7 N.Y.C.R.R. § 701.5 and also described in detail by DOCCS Directive 4040. *See* Dkt. No. 16-14 at ¶¶ 1-2; Dkt. No. 23 at ¶¶ 1 & 2. During his time at Great Meadow, Plaintiff had access to the facility's law library where both Title 7 of the NYCRR and DOCCS Directive 4040 were available for review. *See* Dkt. No. 16-14 at ¶ 3; *but see* Dkt. No. 23 at ¶ 3 ("Deny knowledge . . . as to whether and how often plaintiff had access to the law library").[2]

---

[2] Plaintiff's Counter-Statement of Material Facts fails to cite to any evidence in the record when denying assertions made by Defendants in violation of the Federal Rules of Civil Procedure and this Court's Local Rules. *See* Fed. R. Civ. P. 56(c); N.D.N.Y. L.R. 7.1(a). As such, the Court shall deem admitted any properly supported facts set forth in Defendants' Statement of Material Facts that Plaintiff has failed to specifically controvert. *See* N.D.N.Y. L.R. 7.1(a).

The parties agree that grievances must be filed within twenty-one days of the date of the alleged misconduct. *See* Dkt. No. 16-14 at ¶ 4; Dkt. No. 23 at ¶ 4; *see also* 7 N.Y.C.R.R. § 701.5(a)(1) ("An inmate must submit a complaint . . . within 21 calendar days of an alleged occurrence"). On October 22, 2015, forty-three days after the alleged incident, the Inmate Grievance Resolution Committee ("IGRC") received Plaintiff's grievance. *See* Dkt. No. 16-14 at ¶ 13; *but see* Dkt. No. 23 at ¶ 13 (denied). Plaintiff argues that he "dated his grievance September 28, 2015 within 21 days of the complained of incident . . . . [and denies] knowledge as to why the Grievance office claims to have received [it] . . . one month later . . . ." Dkt. No. 23 at ¶ 13.[3]

On the same date, Plaintiff was notified that his grievance was denied because it was untimely. *See* Dkt. No. 16-14 at ¶ 15. Since Plaintiff's grievance was deemed untimely, it was never officially filed with the clerk of the grievance office. *See id.* at ¶¶ 15 & 16. The parties agree that a "denial of a grievance as untimely cannot be appealed . . . because an untimely grievance is not filed." *Id.* at ¶ 6; Dkt. No. 23 at ¶ 6.

Defendants moved for summary judgment arguing that the "Plaintiff did not properly exhaust his administrative remedies pursuant to . . . 7 N.Y.C.R.R. § 701.5" in violation of the PLRA. *See* Dkt. No. 16-14 at ¶ 22. Defendants' motion is now before the Court.

### III. DISCUSSION

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the

---

[3] Again, Plaintiff failed to support his denial of this fact with a citation to any evidence, such as an affidavit by Plaintiff.

court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to exhaust is an affirmative defense that must

be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the IGRC which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to CORC, which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed

5

before an action asserting that claim may be initially filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860). If the defendant has demonstrated that a grievance process does in fact exist, the burden shifts to the prisoner to prove one of these exceptions. *See Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

In the present matter, the Court finds that Defendants have properly supported the statements set forth in their Statement of Material Facts with citation to admissible evidence in the record. Since Plaintiff has failed to properly controvert any of those facts, they are deemed admitted for purposes of this motion. *See Osier v. Broome Cty.*, 47 F. Supp. 2d 311, 317 (N.D.N.Y. 1999); *Jones v. SmithKline Beecham Corp.*, 309 F. Supp. 2d 343, 346 n.4 (N.D.N.Y. 2004); *Bennett v. Hunter*, No. 9:02-CV-1365, 2006 WL 1174309, *2 (N.D.N.Y. May 1, 2006).

Having considered Defendants' motion and the applicable law, the Court finds that Defendants are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A grievance must be filed within twenty-one days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.5(a)(1). A grievance is deemed made when it is "submitted to the clerk" — not when it is drafted. *See id.* Here, the grievance office did not receive Plaintiff's grievance until October 22, 2015, forty-three days after the event at issue. *See* Dkt. No. 16-14 at ¶ 13; Dkt. No. 16-2 at ¶ 13; Dkt. No. 16-6. That same day Plaintiff was notified that his grievance was denied because it was untimely and Plaintiff never requested an extension. *See* Dkt. No. 16-14 at ¶¶ 14 &15; Dkt. No. 23 at ¶¶ 14 & 15. Since Plaintiff's untimely grievance was denied, there was never a grievance actually filed relating to the alleged events of September 9, 2015. *See* Dkt. No. 23 at ¶ 16. Plaintiff never completed the first step of the New York State grievance process and, therefore, never exhausted his administrative remedies in violation of the PLRA. *See* 7 N.Y.C.R.R. § 701.5(a); *Jones*, 549 U.S. at 218-19; *see e.g.*, *Sanchezmartino v. Demmon*, No. 9:16-CV-0139, 2017 WL 1098168, *6 (N.D.N.Y. Feb. 23, 2017).

Since Plaintiff has failed to exhaust his administrative remedies, the present action can only lie if Plaintiff can demonstrate one of the three aforementioned exceptions. *See Ross*, 136 S. Ct. at 1859-60; *Hubbs*, 788 F.3d at 59. Plaintiff appears to make this type of argument in his

memorandum of law. *See* Dkt. No. 22 at 4 (arguing that the record is not developed enough to "ascertain . . . if [Plaintiff] was denied the ability to file his timely grievance"). However, this argument is unsupported by the record and amounts to nothing more than a call for a fishing expedition which cannot defeat the present motion. *See Alex v. Gen. Elec. Co.*, No. 1:12-CV-1021, 2014 WL 12754934, *23 (N.D.N.Y. Mar. 31, 2014); *see also Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp.2d 295, 308 (S.D.N.Y. 2011) ("[T]he law is very clear that you cannot use discovery to find out whether you have a claim"); *DePaola v. City of New York*, No. 13 Civ. 315, 2013 WL 5597465, *5 (S.D.N.Y. Oct. 9, 2013) ("[P]laintiff's general assertions about the need for discovery amount to the kind of fishing expedition that is not permitted . . . as a means to defeat summary judgment").

Here, Defendants met their burden on summary judgment and Plaintiff has offered only conclusory assertions, unsupported by any evidence, that administrative remedies were unavailable to him. Specifically, Plaintiff offers no evidence to suggest that (1) that he mailed his grievance on the day it was dated, (2) who the grievance was given to for mailing, or (3) whether his attempt at filing his grievance was thwarted by staff in any way. As noted above, Plaintiff could have provided a simple affidavit detailing when he mailed his grievance, who he gave it to, or what, if anything, was done to prevent him from timely filing his grievance, but he did not. *See Crichlow v. Fischer*, No. 9:17-cv-194, 2017 WL 6466556, *11 (N.D.N.Y. Sept. 5, 2017).

Further, the fact that Plaintiff was housed in the SHU during the time at issue does not render administrative remedies unavailable. In fact, Plaintiff acknowledged that he was able to file eight grievances, one of which he appealed to the CORC, while housed in the SHU at Great Meadow. *See* Dkt. No. 23 at ¶¶ 12, 21.

Finally, further supporting the fact that administrative remedies were available is the fact that, when Plaintiff received notice that his grievance was denied as untimely, Plaintiff could have submitted a request for an extension of time to file his grievance. If an inmate is unable to file a grievance within the initial twenty-one day period, the IGP contains provisions for requesting an extension of time to file in cases of mitigating circumstances, so long as the request is made within forty-five days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a). Plaintiff received notice that his grievance was untimely on October 22, 2015, forty-three days after the alleged incident. Therefore, Plaintiff could have timely requested an extension of time, but failed to do so. *See Warren v. Bealey*, No. 9:12-cv-1318, 2014 WL 4715863, *11 (N.D.N.Y. Sept. 22, 2014) (holding that the plaintiff's administrative remedies were available to him when, after his grievance was denied as untimely, the plaintiff could have filed a request for an extension of time but failed to do so) (citation omitted).

Based on the foregoing, the Court grants Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's amended complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 24, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge