**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FREDERICK SMITH,**

                                        **Plaintiff,**

        **vs.**                                                 **9:18-CV-01066**
                                                                **(MAD/TWD)**

**C.O. STEVEN DODGE, C.O. JASON**
**ASHLINE, C.O. PETER MCNALLY,**
**and SERGEANT WILLIAM MURRAY,**

                                        **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**ASHER & ASSOCIATES, P.C.**            **ROBERTA D. ASHER, ESQ.**
111 John Street, 14th Floor             **RYAN H. ASHER, ESQ.**
New York, New York 10038
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK STATE**        **KONSTANDINOS D. LERIS, AAG**
**ATTORNEY GENERAL**                    **ANDREW W. KOSTER, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On September 6, 2018, Plaintiff Frederick Smith, an inmate in the custody of the New

York State Department of Corrections and Community Supervision ("DOCCS") at Great Meadow

Correctional Facility ("Great Meadow"), commenced this civil rights action under 42 U.S.C. §

1983 against Defendants C.O.[1] Steven Dodge ("Dodge"), C.O. Jason Ashline ("Ashline"), C.O.

Peter McNally ("McNally"), and Sergeant William Murray ("Murray").  *See* Dkt. No. 1.

_____

[1] "C.O." is short for "Correction Officer."

Plaintiff's amended complaint alleges that Defendants either assaulted Plaintiff or failed to intervene in that assault in violation of his Eighth Amendment right to be free from cruel and unusual punishment. *See* Dkt. No. 13. On May 24, 2019, this Court concluded that Plaintiff had failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and entered judgment in Defendants' favor. *See* Dkt. No. 35.

Plaintiff appealed, and on March 3, 2021, the United States Court of Appeals for the Second Circuit vacated the judgment and remanded the matter to this Court to "[e]valuate in the first instance whether [Plaintiff]'s non-conclusory factual allegations raise a genuine issue of material fact as to exhaustion." Dkt. No. 39 at 4; *see also Smith v. Dodge*, 835 Fed. Appx. 645, 647 (2d Cir. 2021). Magistrate Judge Dancks held an exhaustion hearing, *see* Dkt. No. 73, and subsequently issued a Report-Recommendation and Order recommending that this Court determine that the administrative remedies set forth under the DOCCS Incarcerated Grievance Program[2] ("DOCCS IGP") were rendered unavailable to Plaintiff and Plaintiff be excused from the exhaustion requirements. *See* Dkt. No. 74. Defendants have filed objections to the Report-Recommendation and Order. *See* Dkt. No. 76-1.

Currently before the Court is the Report-Recommendation and Order and Defendants' objections thereto. For the reasons that follow, the Court adopts the Report-Recommendation and Order in its entirety.

## II. BACKGROUND

The Court assumes the parties' familiarity with the underlying allegations, as set forth in the amended complaint and the Court's May 24, 2019, Memorandum-Decision and Order. *See*

---

[2] The Incarcerated Grievance Program was formerly known as the Inmate Grievance Program. *See* Dkt. No. 73 at 23. This change was to the name only; the grievance process and procedures remain the same as they were previously. *Id.*

Dkt. Nos. 13, 35.

For the sake of adding context to Defendants' objections, the Court will briefly set forth the relevant findings made in the Report-Recommendation and Order. Magistrate Judge Dancks began by determining that the undisputed evidence in the record established that Plaintiff failed to exhaust his administrative remedies with respect to the alleged September 9, 2015 assault (the "September 9 assault") because (1) there was no record of any grievance related to the September 9 assault having been filed at Great Meadow until, on October 22, 2015, the grievance dated September 28, 2015 was received by the grievance office and rejected as untimely; and (2) there was no record of any appeal related to the September 9 assault in Central Office Review Committee ("CORC") records. *See* Dkt. No. 74 at 19-20. Turning to Plaintiff's burden to show that other factors rendered the grievance process unavailable, Magistrate Judge Dancks concluded that "Plaintiff's failure to exhaust [was] excusable because the remedies were unavailable to him due to the opacity of the DOCCS grievance program as administered in this case and the inability or unwillingness of DOCCS personnel to provide relief." *Id.* at 23. In support of this conclusion, Magistrate Judge Dancks (1) thoroughly examined the Second Circuit's decision in *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016), and determined that it supported a finding of unavailability in this case, *see id.* at 20-22, 27; (2) found that Plaintiff's testimony was credible with respect to his efforts to file grievances for the September 9 assault, *see id.* at 23, 25-26; and (3) found that the testimony elicited at the exhaustion hearing "illustrate[d] the opacity of the IGP procedures demanded of Plaintiff," *id.* at 23.

Defendants now argue that Magistrate Judge Dancks' conclusion that administrative remedies were unavailable to Plaintiff was unsupported by the evidence in the record because (1) "the holding in *Williams* is inapplicable to this case," *see* Dkt. No. 76-1 at 7-8; (2) Plaintiff's testimony that he mailed grievances concerning the September 9 assault on September 22 and

3

September 28, 2015, was not credible, *see id.* at 10-12; and (3) ultimately, "the evidence adduced at the hearing established that the grievance process was available to Plaintiff, and Plaintiff simply failed to timely file a grievance in this matter," *id.* at 6-7. Plaintiff opposes each of these arguments. *See generally* Dkt. No. 81-1.

### III. DISCUSSION

**A.    Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.    The Weight Afforded to Plaintiff's Testimony**

"In conducting a de novo review, 'the district court must give appropriate deference to the credibility determinations made by the magistrate judge who conducted an evidentiary hearing and observed the witness testimony.'" *McLean v. Harris*, No. 9:19-CV-1227, 2022 WL 909159, *2 (N.D.N.Y. Mar. 29, 2022) (quoting *United States v. Whitaker*, 342 F. Supp. 3d 391, 393 (W.D.N.Y. 2018)).

The arguments raised by Defendants are not a basis for rejecting Magistrate Judge Dancks' credibility determinations. Although Defendants repeatedly characterize the evidence as inconsistent with Plaintiff's testimony, their objections merely amount to differing ways of

interpreting the evidence or a disagreement as to the amount of credibility that should have been afforded to Plaintiff.  As an example, Defendants point to evidence in the record establishing that Plaintiff was able to file a number of unrelated grievances and letters of complaint, all of which reached their intended destination in a timely fashion.  *See* Dkt. No. 76-1 at 10.  Defendants argue that Plaintiff's demonstrated ability to file grievances in a timely manner makes Plaintiff's claim that DOCCS personnel intercepted or delayed his September 22 and September 28 grievances "not plausible" and "entirely speculative."  *Id.* at 11.  In contrast, Magistrate Judge Dancks determined that Plaintiff's ability to file grievances in a timely manner *supported* Plaintiff's credibility, in that it suggested that, here, he would have attempted to file a grievance concerning the September 9 assault in a timely manner, just as he had done several times before.  *See* Dkt. No. 74 at 23.

Both of these views find support in the record, and the Court will not overturn credibility determinations on disputed issues of fact made by the magistrate judge who observed the witness testimony solely because that evidence is susceptible to multiple interpretations.  *See United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013) ("The Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings") (citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008)); *see also United States v. Chalarca*, 95 F.3d 239, 244 (2d Cir. 1996) ("'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous'") (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).[3]

---

[3] Similarly, Defendants argue that Plaintiff's testimony was "not plausible" because (1) "Plaintiff did not mention the alleged September 22, 2015 grievance in any of his correspondence[] or subsequent grievances"; and (2) it "begs the question" of why, if Defendants intended to foreclose any possibility for Plaintiff to request an extension of time to

Accordingly, the Court adopts Magistrate Judge Dancks' credibility determinations.

**C.    The Second Circuit's Decision in *Williams***

In *Williams*, a plaintiff inmate was attempting to assert claims for violations of his Eighth Amendment rights, and the Second Circuit was presented with the threshold question of whether the plaintiff had exhausted all available administrative remedies prior to filing the lawsuit. *See Williams*, 829 F.3d at 119. As relevant here, the plaintiff alleged that he drafted a grievance detailing his allegations and gave that grievance to a correction officer to forward to the grievance office. *See id.* at 120-21. A week later, the plaintiff alleged that he spoke to a correction officer about the incident and informed him he had not yet received a response to his grievance. *See id.* at 121. A week after that, the plaintiff was transferred to another facility, never having received a response to the grievance. *See id.* Ultimately, the Second Circuit concluded that the grievance "process was not available to [the plaintiff] because the applicable grievance procedures [were] 'so opaque' and confusing that they were, 'practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 578 U.S. at 643). The Second Circuit set forth three grounds to support that conclusion. First, the court found that the "regulations plainly do not describe a mechanism for appealing a grievance that was never filed." *Id.* at 126. Second, the court found that "the process to appeal an unfiled and unanswered grievance [was] prohibitively opaque, such that no inmate could actually make use of it." *Id.* Finally, the court found that the issues identified above were "compounded" by the fact that the plaintiff had been "transferred to another facility approximately two weeks after giving his grievance to the correction officer" and the guidelines provided no "guidance on how a transferred inmate can appeal his grievance with the original facility without having

_____

file this grievance, they did not simply "completely discard both grievances, or at the very minimum, wait until after [the time to request an extension had passed]." Dkt. No. 76-1 at 11-12. These arguments fail for the same reasons expressed above.

received a response." *Id.*

Magistrate Judge Dancks did not err in relying on *Williams* when determining that administrative remedies were unavailable to Plaintiff. Here, just as in *Williams*, Magistrate Judge Dancks found that Plaintiff's failure to exhaust his administrative remedies should be excused "because the regulations in effect at the time 'g[a]ve no guidance whatsoever to an inmate' in Plaintiff's position." Dkt. No. 74 at 26-27 (quoting *Williams*, 829 F.3d at 124). Contrary to Defendants' arguments, there is nothing in the decision in *Williams* that renders it inapplicable where a grievance is "untimely" rather than "never received," or that requires "transfer to another facility" before a finding of unavailability can be reached. Dkt. No. 76-1 at 7-8. Rather, the critical finding in *Williams* was that the applicable grievance procedures provided no guidance on how to proceed in the plaintiff's particular circumstances, rendering the exhaustion process "'so opaque' and 'so confusing that ... no reasonable prisoner can use [it].'" *Williams*, 829 F.3d at 124 (quotation omitted). Magistrate Judge Dancks made the same conclusion here. *See* Dkt. No. 74 at 26-27. In sum, although Defendants correctly note that there are several factual differences between *Williams* and this case, those differences do not render the legal principles articulated in *Williams* inapplicable to this case.

**D.     The Availability of the Grievance Process**

*1. Standard*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  *See Woodford*, 548 U.S. at 90-103.

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016).  The Supreme Court has identified three examples of unavailable administrative procedures: (1) those that "operate[ ] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) those that are "so opaque that [they] become[ ], practically speaking, incapable of use," where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" and (3) those where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44.

The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).  The defendant discharges its initial burden by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. *White v. Velie*, 709 Fed. Appx. 35, 38 (2d Cir. 2017) (summary order); *Williams*, 829 F.3d at 126 n.6.  The burden then shifts to the plaintiff, who must show that "other factors ... rendered a nominally available

procedure unavailable as a matter of fact." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citation omitted); *see Ross*, 578 U.S. at 638.

### 2. The Availability of Administrative Remedies

The Court has reviewed the entire record and concludes that Magistrate Judge Dancks correctly determined that the administrative remedies under the DOCCS IGP were rendered unavailable to Plaintiff.[4]  Initially, with respect to Plaintiff's September 22 grievance, which was never received by the grievance office, "the regulations give no guidance whatsoever to an inmate whose grievance was never filed." *Williams*, 829 F.3d at 124.  As to the September 28 grievance, Plaintiff credibly testified that he submitted the grievance to the grievance office on September 28, 2015, and that it was picked up by the overnight officer on duty.  *See* Dkt. No. 73 at 229-30, 273-79.  Defendants have conceded that, from that point on, the officer who picked up the mail had exclusive control over how and when the grievance got to the grievance office, *see id.* at 114-16, 144, but failed to produce any evidence or testimony concerning why Plaintiff's September 28 grievance did not arrive at the grievance office until October 22, 2015—nearly a month later—when the mailing procedure usually takes "two or three days," *id.* at 167. Defendants then declined to treat the September 28 grievance as a request for an extension to file a grievance related to the September 9 assault, because it was missing a specific request for an extension.  *See id.* at 83.  Defendants correctly note that, under DOCCS IGP rules, Plaintiff still could have requested an extension of time to re-file his grievance, or filed a new grievance regarding the alleged failure to timely file his earlier grievance.  *See* 7 N.Y.C.R.R. § 701.6(g)(1)(i), (ii).  However, Defendants also repeatedly rejected Plaintiff's attempts to do just that, allegedly due to issues with the precise form of the letters or to whom they were sent.  *See*

---

[4] As noted above, the Court has adopted Magistrate Judge Dancks' credibility determinations.

*id.* at 34, 37-38, 178-79, 184-85, 189-90, 199-200.  The Court therefore determines that Defendants' administration of the DOCCS IGP rules in this case have rendered Plaintiff's administrative remedies unavailable.  *See Ross*, 578 U.S. at 643 ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates") (citation omitted).

Accordingly, the Court concludes that administrative remedies were unavailable to Plaintiff.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Dancks' Report-Recommendation and Order, Defendants' objections and the applicable law, and for the reasons stated above, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order (Dkt. No. 74) is **ADOPTED in its entirety** for the reasons stated herein; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: April 18, 2023
     Albany, New York

Mae A. D'Agostino
U.S. District Judge