UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

FREDERICK SMITH,

                                    Plaintiff,

   vs.                                                    9:18-CV-1066
                                                              (MAD/CBF)
C.O. STEVEN DODGE, C.O. JASON ASHLINE,
C.O. PETER MCNALLY, and SERGEANT
WILLIAM MURRAY,

                                    Defendants.

_____

APPEARANCES:                                   OF COUNSEL:

FREDERICK SMITH
15-A-1771
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582
Plaintiff, *pro se*

OFFICE OF THE NEW YORK              KONSTANDINOS D. LERIS, AAG
STATE ATTORNEY GENERAL              LAUREN ROSE ROSENBERG, AAG
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

    This case has been ongoing for seven and a half years and the facts underlying the matter

occurred nearly eleven years ago.  Plaintiff initiated this action with the filing of a complaint on

September 6, 2018.  *See* Dkt. No. 1.  The original complaint was filed by counsel whom Plaintiff

hired.  *See id.*  Plaintiff's counsel then filed an amended complaint on December 28, 2018,

alleging two causes of action—cruel and unusual punishment and failure to intervene—pursuant to 42 U.S.C. § 1983 against Defendants Steven Dodge, Jason Ashline, Peter reMcNally, and William Murray. *See id.* Defendants are corrections officers and Plaintiff's claims stem from an alleged use of force on September 9, 2015, while Plaintiff was housed at Great Meadow Correctional Facility.

Plaintiff has been proceeding *pro se* since August of 2024. *See* Dkt. Nos. 125, 126, 129. Presently before the Court are Plaintiff's two appeals from Magistrate Judge Therese Wiley Dancks's denial of Plaintiff's motions to amend his complaint and compel discovery and numerous letters related to those appeals. *See* Dkt. Nos. 189, 205, 215, 220. Defendants oppose Plaintiff's appeal of the decision on the motion to compel. *See* Dkt. Nos. 209. Defendants did not file an opposition to Plaintiff's appeal regarding the motion to amend. Plaintiff also filed a motion for preliminary injunction, *see* Dkt. No. 197, which Defendants oppose, *see* Dkt. No. 206. Plaintiff has also sought leave to appeal, *see* Dkt. No. 218, and to file a motion for sanctions, *see* Dkt. No. 225.

For the following reasons, Plaintiff's appeals, motion for a preliminary injunction, motion for leave to appeal, and request for leave to file a motion for sanctions are denied.

## II. BACKGROUND

Before filing their answer to Plaintiff's amended complaint, Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. No. 16. The Court granted the motion and dismissed the amended complaint. *See* Dkt. No. 35. Plaintiff appealed the Court's decision, *see* Dkt. No. 37, and the Second Circuit vacated the decision and remanded the case, *see* Dkt. No. 39. The Court then scheduled a hearing to

determine whether Plaintiff exhausted his administrative remedies. *See* Text Minute Entry 4/27/2021. The hearing was held by Magistrate Judge Dancks on August 16 and 17, 2021.

On January 19, 2022, Magistrate Judge Dancks issued a Report-Recommendation and Order recommending the Court deny the motion for summary judgment on the ground that administrative remedies were unavailable to Plaintiff. *See* Dkt. No. 74. The Court adopted the Report-Recommendation and Order on April 18, 2023. *See* Dkt. No. 94. Defendants then filed their answer to Plaintiff's amended complaint on May 1, 2023. *See* Dkt. No. 85. Based on Magistrate Judge Dancks' Uniform Pretrial Scheduling Order, amended pleadings were due July 31, 2023. *See* Dkt. No. 87.

On November 14, 2023, Plaintiff moved to strike Defendants' answer through a counseled motion. *See* Dkt. No. 98. While the motion was pending, Plaintiff filed a letter requesting to proceed *pro se*. *See* Dkt. No. 108. With the Court's permission, Plaintiff's counsel filed a formal motion to withdraw as Plaintiff's attorney. *See* Dkt. Nos. 112, 113. Before ruling on Plaintiff and his counsel's filings, Chief Judge Brenda K. Sannes referred the case to the Court's Prisoner Mediation Program and stayed the case pending mediation. *See* Dkt. No. 114. The parties' mediation was unsuccessful and the stay was lifted on June 20, 2024. *See* Dkt. Nos. 122, 123.

Magistrate Judge Dancks then denied Plaintiff's motion to strike the answer and granted the motion for his counsel to withdraw. *See* Dkt. Nos. 124, 125. The case was again stayed pending Plaintiff's receipt of his case file from his attorneys. *See* Dkt. No. 129. Following compliance, the stay was lifted on November 6, 2024. *See* Dkt. No. 139.

On December 9, 2024, Plaintiff filed a letter stating his intention to amend his complaint. *See* Dkt. No. 146. Despite the amended pleadings deadline having passed more than one year before, Magistrate Judge Dancks permitted Plaintiff to file a motion to amend. *See* Dkt. No. 147.

3

Plaintiff filed his motion in January of 2025. *See* Dkt. Nos. 148, 150, 154. Defendants opposed the motion. *See* Dkt. No. 158. On April 28, 2025, Plaintiff requested leave to file a motion to compel. *See* Dkt. No. 165. With permission from the Court, Plaintiff filed the motion to compel on May 23, 2025. *See* Dkt. No. 172. Defendants opposed the motion. *See* Dkt. No. 179.

On August 11, 2025, Magistrate Judge Dancks denied Plaintiff's motion to amend the amended complaint. *See* Dkt. No. 184. Plaintiff appealed that decision on September 8, 2025. *See* Dkt. No. 189. Magistrate Judge Dancks then denied Plaintiff's motion to compel, *see* Dkt. No. 192, which Plaintiff appealed, *see* Dkt. No. 205. Plaintiff also filed a motion for a preliminary injunction. *See* Dkt. No. 197.

On February 2, 2026, Plaintiff moved for a clerk's entry of default. *See* Dkt. Nos. 211, 222. The Court denied Plaintiff's request. *See* Dkt. No. 213. Plaintiff then filed two letters to correct clerical mistakes in one of his filings and the Court's Text Order denying his request for default. *See* Dkt. Nos. 215, 220. Plaintiff also filed a letter requesting leave to appeal the Court's Text Order. *See* Dkt. No. 218. Finally, on April 27, 2026, Plaintiff filed a letter seeking permission to file a motion for sanctions against Defendants for alleged discovery violations. See Dkt. No. 225.

### III. DISCUSSION

**A.    Appeals of Magistrate Judge's Decision**

***1. Legal Standard***

"A party may appeal to the District Judge from a magistrate judge's decision on a non-dispositive matter." *Endemann v. Liberty Ins. Corp.*, No. 5:18-CV-701, 2022 WL 5173104, *2 (N.D.N.Y. Jan. 6, 2022) (citing N.D.N.Y. L.R. 72.1(b)). "Pretrial disputes concerning discovery generally are non-dispositive matters because they do not resolve parties' substantive claims for

relief as set forth in the pleadings." *Labarge v. Chase Manhattan Bank, N.A.*, 95-CV-173, 1997 WL 583122, *1 (N.D.N.Y. Sept. 3, 1997). "When reviewing an appeal from a pretrial non-dispositive motion decided by a magistrate judge, the court will affirm the order unless it is clearly erroneous or contrary to law." *Ctr. for Food Safety, Inc. v. Wood Farms, LLC*, No. 5:23-CV-399, 2023 WL 11116397, *2 (N.D.N.Y. Sept. 26, 2023) (quoting *Jones v. Smith*, No. 9:09-CV-1058, 2015 WL 5750136, *2 (N.D.N.Y. Sept. 30, 2015)). "A decision is clearly erroneous where 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Collymore v. City of New York*, No. 16-CV-8270, 2021 WL 2269538, *1 (S.D.N.Y. June 3, 2021) (quoting *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004)). "An order is 'contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (quoting *Knitting Fever, Inc. v. Coats Holding Ltd.*, No. 05-CV-1065, 2005 WL 3050299, *3 (E.D.N.Y. Nov. 14, 2005)). "Ultimately, then, a party challenging a magistrate judge's decision bears the 'heavy burden' of establishing that the magistrate judge 'abused his broad discretion over resolution of discovery matters.'" *Endemann*, 2022 WL 5173104, at *2 (citations omitted).

### 2. Motion to Amend

Magistrate Judge Dancks denied Plaintiff's *pro se* motion to file a second amended complaint. *See* Dkt. No. 184. In reviewing Plaintiff's motion, Magistrate Judge Dancks first explained as follows:

> Plaintiff's proposed second amended complaint, which was filed more than six years after this case was initiated and sixteen months after the deadline for amended pleadings, is 113 pages long, and includes new claims against the named Defendants based on events that occurred after the use-of-force incident at issue, as well as new claims against 28 proposed new defendants based on these officials

> either playing a role in the use-of-force incident, or engaging in wrongdoing after September 9, 2015.
>
> More specifically, in addition to reasserting the Eighth Amendment claims set forth in the amended complaint, the proposed second amended complaint alleges that various officials other than the four named Defendants subjected Plaintiff to harm after the alleged use-of-force incident by (1) exposing him to inadequate confinement conditions, meals, and medical treatment, (2) refusing to investigate the events of September 9, 2015, (3) engaging in conduct designed to cover up the events of September 9, 2015, and/or (4) depriving him of due process during his disciplinary hearing arising out of the events of September 9, 2015. . . . Plaintiff believes that some of these officials engaged in this wrongdoing because he filed a grievance regarding the use-of-force incident.

*Id.* at 6-7 (citations omitted). In his appeal, Plaintiff does not dispute this description of his proposed second amended complaint but argues that Magistrate Judge Danks's subsequent legal conclusions constitute clear error. *See* Dkt. No. 189.

Magistrate Judge Dancks concluded that neither Plaintiff nor his attorneys exercised due diligence in seeking to earlier file a second amended complaint. *See* Dkt. No. 184 at 7-10. She also determined that permitting Plaintiff to file his proposed second amended complaint would prejudice Defendants. *See id.* at 10-12. Magistrate Judge Dancks also analyzed the futility of Plaintiff's proposed amendments and concluded that permitting him to amend would be futile because the claims are barred by the statute of limitations. *See id.* at 12-17. Specifically, she noted that "the last incident of wrongdoing identified in the proposed second amended complaint occurred in June 2016, when Plaintiff completed his SHU sanction arising out of the disciplinary determination related to the events of September 9, 2015." *Id.* at 13. Magistrate Judge Dancks concluded that the 2016 claims do not relate back to the filing of Plaintiff's original complaint because they concern entirely new defendants or causes of action which were not present in the original complaint. *See id.* at 14-15.

Plaintiff argues he exercised due diligence by asking his attorney about the status of raising additional claims in his case. *See* Dkt. No. 189 at 3-4. He states he could not immediately file a motion to amend after he began to represent himself because he did not have the attorney's case file. *See id.* at 4. Plaintiff contends he was not "aware" of his attorney's mistakes until three months after the deadline for filing an amended pleading and he did not know about the Court's scheduling order. *See id.* Plaintiff also asserts that the Court prevented him from firing his attorney by referring his case to the Prisoner Mediation Program which further delayed his filing of the motion to amend. *See id.* at 4-5.

As to the specific claims and defendants Plaintiff adds in the proposed second amended complaint, Plaintiff argues they relate back to the time the original complaint was filed because (1) his counsel misunderstood Plaintiff's case and the claims he wanted to bring; (2) the original complaint did allege a municipal or supervisory liability claim based on an unconstitutional policy or custom; and (3) the new defendants should know they could be brought into this case because they would be represented by the same attorneys that represent the current Defendants. *See id.* at 5-26.

Magistrate Judge Dancks correctly stated the legal standards applicable to a motion to amend. *See* Dkt. No. 184 at 3-4, 7-14. However, because Plaintiff profusely argues Magistrate Judge Dancks committed clear error, the Court will reiterate them, herein.

"Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995)). "If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party 'at

any time, on just terms,' governs." *Randolph v. Graham*, No. 9:19-CV-1161, 2020 WL 2393804, *2 (N.D.N.Y. May 11, 2020) (citing FED. R. CIV. P. 21). "[T]he 'showing necessary under Rule 21 is the same as that required under Rule 15(a).'" *Id.* (quoting *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012)). Additionally, "[a]lthough Rule 15(a) governs the amendment of pleadings, Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) (citing FED. R. CIV. P. 16(b)). "Under Rule 16(b), a party may obtain a modification of the scheduling order only 'upon a showing of good cause.'" *Id.* (quoting FED. R. CIV. P. 16(b)). "'[I]f [a court[ considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). "[A] finding of 'good cause' depends on the diligence of the moving party." *Id.*

"Although generally the court affords *pro se* litigants like Plaintiff 'special solicitude,' . . . 'a party's present or former *pro se* status does not function as a substitute for an actual showing of good cause,'" *Morales v. Mackenzie*, No. 5:17-CV-124, 2021 WL 1018614, *2 (D. Vt. Mar. 17, 2021) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (additional citation omitted). "Stated differently, a party's *pro se* status 'does not relieve h[im] of compliance with Rule 16(b)'s diligence requirement.'" *Id.* (quoting *Valentin v. City of Rochester*, 11-CV-6238, 2016 WL 5661729, *7 (W.D.N.Y. Sept. 30, 2016)). "Indeed, as one court explained: '[t]o conclude that [a] [p]laintiff's *pro se* status alone is sufficient to constitute good cause under [Rule] 16(b)(4) would entirely deprive Rule 16 scheduling orders of their efficacy in

8

any case involving a pro se party.'" *Id.* (quoting *Romero v. Teamsters Union Local 272*, 1:15-CV-07583, 2019 WL 4688642, *8 (S.D.N.Y. Sept. 25, 2019)); *see also Servello v. New York State Off. of Child. & Fam. Servs.*, No. 1:18-CV-777, 2020 WL 8461517, *2 (N.D.N.Y. Oct. 29, 2020) ("[A] party's present or former *pro se* status does not function as a substitute for an actual showing of 'good cause'") (citations omitted); *Bradshaw v. Welch*, No. 9:21-CV-826, 2026 WL 587707, *2 (N.D.N.Y. Mar. 3, 2026).  "Moreover, 'the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b).'" *Morales v. Mackenzie*, No. 5:17-CV-124, 2021 WL 1018614, *2 (D. Vt. Mar. 17, 2021) (citations omitted).

"Generally, a motion to amend will be denied as futile 'if the claims sought to be added are barred by the relevant statute of limitations.'" *Darden v. Cnty. of Suffolk*, No. 21-CV-5132, 2026 WL 221361, *3 (E.D.N.Y. Jan. 28, 2026) (quoting *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 397 (E.D.N.Y. 1998)).  "Nevertheless, 'an otherwise time-barred claim may be deemed timely based on the "relation back" doctrine.'" *Id.* (citations omitted).  "In New York, the three-year statute of limitations applicable to personal injury actions also applies to § 1983 claims and runs from the date the plaintiff had reason to know of [his or] her injury." *Callicutt v. Scalise*, No. 1:11-CV-1282, 2013 WL 432913, *3 (N.D.N.Y. Feb. 4, 2013).  For a claim to relate back, the following must be true:

> (1) the amendment asserts a claim arising from the "conduct, transaction or occurrence" in the original pleading; and (2) within 120 days after the complaint is filed, the party to be added (i) "received such notice of the action that it will not be prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*Id.* (quoting *Abdell v. City of New York*, 759 F. Supp. 2d 450, 454 (S.D.N.Y. 2010)); *see* FED. R. CIV. P. 15(c)(1)(B-C).  "'[T]he central inquiry is whether adequate notice of the matters raised in

9

the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *DeJesus v. Ramirez*, No. 3:23-CV-54, 2025 WL 857371, *3 (D. Conn. Mar. 19, 2025) (quoting *Stevelman v. Alias Rsch. Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)).  The Second "Circuit has interpreted the rule to preclude relation back for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citing *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999); *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996)).

Plaintiff places the blame on his former counsel and relies on his *pro se* status to assert the existence of good cause for failing to move to amend within the deadline set by Magistrate Judge Dancks's scheduling order.  Plaintiff contends his former counsel did not understand his case and mistakenly pursued this action against "DOCCS individual state actors rather than DOCCS []and associated supervisory and individual state actors as defendants in the case." Dkt. No. 189 at 24. Plaintiff states that he filed his motion to amend as soon as he could after representing himself and receiving the case file from his former counsel.  *See id.* at 3-5.

Plaintiff filed his letter requesting to proceed *pro se* on February 12, 2024.  *See* Dkt. No. 108.  The deadline to file amended pleadings had already expired on July 31, 2023.  *See* Dkt. No. 87.  In his letter, across three handwritten pages, Plaintiff details numerous issues he took with counsel's performance and information he sought to receive.  *See* Dkt. No. 108 at 2-4.  This included, for example, being represented by a different attorney from counsel's law firm during his deposition; failing to receive notice when the Court issued a decision or documents produced from Defendants regarding his case; and failing to issue subpoenas Plaintiff wanted to be issued,

10

to be notified of settlement negotiations, to schedule Defendants' depositions, and to receive copies of his own deposition testimony. *See id.* Plaintiff also detailed the precise discovery he wanted to receive such as x-ray reports, injury reports, and defendants' disciplinary history. *See id.* at 3-4. In that letter, Plaintiff did not ask for leave to amend his complaint nor did he assert that he asked counsel to amend the complaint and counsel refused. *See generally* Dkt. No. 108.

Plaintiff is correct that numerous months passed where the case was stayed pending mediation and Plaintiff's counsel sending their case file to Plaintiff. *See* Dkt. Nos. 114, 117-122, 129, 139. Plaintiff filed another letter on September 5, 2024, regarding his ability to proceed *in forma pauperis* in which he stated he still not have his attorneys' case file and that the file contained evidence helpful to present his "non frivolous meritorious claims. Including not limited to non parties to the instant civil action employed and not employed by DOCCS." Dkt. No. 127 at 5. Plaintiff noted that the first time he ever saw the original complaint was during his deposition on October 13, 2023. *See id.* at 6. However, in that letter, Plaintiff again said nothing about intending to file an amended complaint with additional defendants and claims. *See generally* Dkt. No. 127. It was not until Plaintiff filed another letter on December 9, 2024, that he stated he received the case file from his attorneys and intended to amend his claims. *See* Dkt. No. 146.

Plaintiff did not explain in his letters or in his present appeal why he could not have earlier stated his intention to amend his complaint. For instance, Plaintiff provides no justification for failing to alert the Court to his plans when he initially moved to proceed *pro se*. Plaintiff states he needed counsel's case file to amend his claims, but he does not explain why he could not, at least, inform the Court that he would be seeking leave to amend once he received the file. Likewise, this case revolves around Plaintiff's experiences. Plaintiff knows what his own claims are, and he has not demonstrated good cause for why he did not seek to add claims to his case within the six

years the case had been open before he filed the December 9, 2024, letter.  The Court has also

reviewed Plaintiff's deposition testimony and, even accepting his assertion as true that he did not

see a copy of the complaint until his deposition in October 2023, Plaintiff did not testify in that

deposition about a desire to amend the pleading.  *See* Dkt. No. 158-10.  One of Defendants'

attorneys asked Plaintiff if "[o]ther than your excessive force and failure to intervene claims, [he

had] any other claims in this action against these Defendants that we haven't discussed today."  *Id.*

at 118.  Plaintiff asked for clarification as to whether the question "relates to only those four

officers."  *Id.*  When counsel affirmed the question, Plaintiff responded, "Yes. . . .  They offered a

false misbehavior report against me. . . .  I want to press criminal charges."  *Id.* at 119.

Defendants' attorney stated, "Okay.  Well that's not part of this civil lawsuit.  I'm asking you with

respect to this civil lawsuit, is there any other claims that you have that we haven't discussed?"

*Id.*  Plaintiff responded, "Not that I can recall."  *Id.*  Based on the foregoing, Plaintiff has not

established that he exercised due diligence in seeking to file a second amended complaint.

Likewise, Plaintiff has not presented any information proving that his failure to earlier

name the additional defendants is the result of a "mistake."  As stated, "'the failure to identify

individual defendants when the plaintiff knows that such defendants must be named cannot be

characterized as a mistake.'"  *Hogan*, 738 at 518 (quoting *Barrow*, 66 F.3d at 470).  This is not a

circumstance where Plaintiff named certain DOCCS employees when he meant to name others, or

he included "John Doe" placeholders.  Plaintiff's complaint and amended complaint were limited

to the alleged assault of his person by the four named Defendants.  Plaintiff's failure to allege

anything related to subsequent interactions with additional individuals cannot be categorized as a

"mistake."  Therefore, Plaintiff has failed to establish good cause that would permit belated

amendment of his complaint.

Even if Plaintiff had earlier informed this Court of his intention to bring additional claims and name additional Defendants, Magistrate Judge Dancks did not commit clear error in denying leave to amend because of the length of this case. The case was opened on September 6, 2018. *See* Dkt. No. 1. The incident underlying Plaintiff's claims occurred on September 9, 2015. *See* Dkt. No. 13 at ¶ 10. Permitting Plaintiff to add claims and defendants at this stage of the litigation would be highly prejudicial to the new and existing defendants. *See Connecticut Light & Power Co. v. USIC Locating Servs., LLC*, No. 3:20-CV-403, 2021 WL 3127071, \*6 (D. Conn. July 22, 2021) ("[W]hen courts have denied leave to amend, it is often where a party requests amendment after a lengthier delay and/or at a later stage in litigation") (collecting cases that denied leave to amend when two-to-three years had passed).

Plaintiff argues the new defendants would not be prejudiced by being brought into the case at this late stage because they would be represented by the same attorneys that represent the currently named Defendants. *See* Dkt. No. 189 at 18, 25. Specifically, Plaintiff asserts that "the law prescribes to everyone including the later-named individuals, the knowledge of the law that prescribes the potential Section 1983 liability . . . . Through [the Attorney General's Office, new defendants and claims were fairly appropriately noticed and do relate back." *Id.* at 24-25.

A "'newly named party's actual or constructive notice of the suit satisfies the notice requirement.'" *Burris v. Nassau Cnty. Dist. Att'y*, No. 14-CV-5540, 2023 WL 6450398, \*10 (E.D.N.Y. Sept. 30, 2023) (quoting *Edwards v. City of New York*, No. 14-CV-10058, 2015 WL 5052637, \*5 (S.D.N.Y. Aug. 27, 2015)). As to "'constructive notice, knowledge of a lawsuit can be imputed to a[n] unnamed government official through the attorney who would represent him, as long as that attorney also represented the government entities or officials already sued and knew or should have known that the new defendant would be named.'" *Marsh-Godreau v. Suny*

13

*Coll. at Potsdam*, No. 8:15-CV-437, 2016 WL 1049004, *8 (N.D.N.Y. Mar. 11, 2016) (quoting

*Diaz v. City of New York*, No 13-CV-8281, 2015 WL 6125586, *2 (S.D.N.Y. Oct. 7, 2015)).

"'The constructive notice doctrine is based on the theory that the newly added defendant is not

prejudiced by the lack of notice if his attorney has already begun preparing a defense for the

named defendant during the limitations period.'" *Id.* (quoting *Velez v. Fogarty*, No. 06-CV-

13186, 2008 WL 5062601, *5 (S.D.N.Y. Nov. 20, 2008)); *see also Burris*, 2023 WL 6450398, at

*10.  Courts have noted that "[c]onstructive notice . . . may be imputed to the State of New York

and its agencies" such as DOCCS through representation by the Attorney General's Office.

*Maccharulo v. Gould*, 643 F. Supp. 2d 587, 594 (S.D.N.Y. 2009); *see also Marsh-Godreau*, 2016

WL 1049004, at *8.

Plaintiff has not provided the Court with any information that indicates the proposed

additional Defendants were on constructive notice of their potential involvement in this action

within the limitations period.

As previously stated, "in New York, the statute of limitations for Section 1983 claims is

New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5),

which is three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023)

(citing *Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020)).  Plaintiff alleges

Defendants' use of force occurred on September 9, 2015.  *See* Dkt. No. 13 at ¶ 10.  Plaintiff's

original complaint was filed by counsel on September 6, 2018.  *See* Dkt. No. 1.  As Plaintiff's

complaint was filed within days of the three-year statute of limitations expiring, the additional

defendants could not have actual or constructive notice of Plaintiff's potential claims against

them.

To be sure, during his deposition in October 2023, Plaintiff testified that during and after the alleged assault, there were additional corrections officers around him in addition to the four named Defendants. *See* Dkt. No. Dkt. No. 158-10 at 61, 65, 125. Plaintiff stated that when he was taken to the medical unit, there was another sergeant screaming at him. *See id.* at 126. Plaintiff also mentioned "Brian Erwin" in his deposition as the individual from the Office of Special Investigations who took Plaintiff's statement about the alleged assault "eight days after it happened." *Id.* at 109. Plaintiff said he "had an issue with Brian Erwin about [what was put in his statement], and [Erwin] went through lengths to tell [Plaintiff] that this was just to get things going. That this was just, you know that they were going to come and get [Plaintiff's] actual statement at a later point in time." *Id.* at 128.

On December 4, 2018, Defendants served their initial Rule 26 discovery disclosures to Plaintiff's counsel, which stated "[i]t is further anticipated that the following individuals have discoverable information," including: Matthew Waters, Matthew Keough, Mark Patch, Tom Murphy, Michael Lyons, C.O. Bickford, C.O. D. Porlier, and C.O. S. Winchell and Howard Silverberg, M.D. Dkt. No. 158-2 at 2-3. On May 22, 2023, Defendants provided Plaintiff's counsel with a supplemental disclosure, which mentioned Thomas Pray, Michael Spina, and J. Scroggy. *See* Dkt. No. 158-4 at 2-3. In addition to Brian Irwin, these individuals make up most of Plaintiff's proposed additional defendants. *See* Dkt. No. 154-1 at 1. It appears, therefore, that Defendants' counsel knew about the individuals' potential involvement in, or knowledge of, the facts underlying Plaintiff's case.

However, those disclosures do not establish that amendment should have been permitted because they were made years ago, were not made within the statute of limitations and, the proposed amendments do not "aris[e] from the 'conduct, transaction or occurrence' in the original

15

pleading[.]" *Callicutt*, 2013 WL 432913, at *3 (citation omitted). Plaintiff, in his appeal, admits as much. Plaintiff references his intention to allege claims concerning the "newly/original named Defendants personal involvement in the 9/9/15 and *derivative occurrences* . . . ." Dkt. No. 189 at 8 (emphasis added). Plaintiff explains that "[*s*]*ubsequent t*o the assault," the original or new defendants falsified records, were indifferent to his medical needs, prevented him from communicating with his family about the alleged assault, and denied him essential services. *Id.* at 8-12 (emphasis added).

Plaintiff's complaint and amended complaint concerned solely the use of force incident. *See* Dkt. Nos. 1, 13. The complaints do not mention anything that happened after the moment force was used which supports denying leave to amend. *See Wallace v. Warden of M.D.C.*, No. 14-CV-6522, 2016 WL 69 01315, *7 (S.D.N.Y. Nov. 23, 2016) (denying leave to amend despite "[t]aking the original Complaint as a whole, even viewing it in light of both the 'liberal relation back policy' and the 'rule that *pro se* complaints must be liberally construed,'" because "the only event described in the original Complaint is [the] use of force" and the proposed amended complaint "asserts entirely new factual allegations, namely that [another defendant] inadequately investigated a false report that was filed in retaliation for plaintiff's complaint about [the] use of excessive force").

There is, however, no reason the additional claims and defendants could not have been included in the original and amended complaints. Indeed, "[s]everal courts have denied motions to amend when the new allegations clearly could have been included in prior versions of the complaint." *Casaccia v. City of Rochester*, No. 6:17-CV-06323, 2019 WL 3816561, *5 (W.D.N.Y. Aug. 14, 2019) (collecting cases).

16

As a part of his proposed amendments, Plaintiff seeks to add claims against DOCSS for alleged unconstitutional policies and practices and against Defendants' supervisors for alleged failures to intervene and for permitting unconstitutional policies and practices. *See* Dkt. No. 150-1 at 27-28. Plaintiff argues in his appeal that the first amended complaint includes a policy and custom claim concerning a failure to intervene. *See* Dkt. No. 189 at 5-6, 19. However, he also states in the appeal that his former counsel "could not factually raise policy/customs claim against any defendants named/not named in [the first amended complaint] without first establishing the statutory legal requirements of a 1983 complaint to allege allegations of a municipality/supervisory claims and name a defendant it is attributable to . . . ." *Id.* at 22.

Plaintiff is incorrect that any policy or custom claim was alleged in the first amended complaint. The first amended complaint contains two causes of action: a cruel and unusual punishment claim and a failure to intervene claim against four individual defendants. *See* Dkt. No. 13. There is no mention of a supervisor or DOCCS engaging in unconstitutional conduct. *See id.* There are no allegations in the original or first amended complaints which would have put the proposed supervisory defendants on notice that they might be brought into the case. That is particuaurly true where the proposed second amended complaint references falsifying records and medical indifference, which are not claims in the original or amended complaint. Therefore, Plaintiff's proposed amended claims do not relate back. *Cf. Erdogan v. Nassau Cnty.*, No. 10-CV-05837, 2014 WL 1236679, *12 (E.D.N.Y. Mar. 25, 2014) (denying motion to amend to add existing defendant's supervisors "lack of knowledge does not meet the threshold for the element of mistake . . .").

In sum, Plaintiff's appeal concerning his motion to amend must be denied because Magistrate Judge Dancks' decision was not contrary to law nor the result of clear error.

17

### 3. Motion to Compel

In Magistrate Judge Dancks's decision on Plaintiff's motion to compel, she granted some of Plaintiff's document requests. *See* Dkt. No. 192.   For example, Magistrate Judge Dancks granted Plaintiff's requests for Defendants' personnel files and disciplinary records concerning excessive force. *See id.* at 11-13.  She denied, however, Plaintiff's requests for "Use of Force, Unusual Incident Reports, and Misbehavior Reports prepared by Defendants for the 15-year period of 2009-2024, along with grievances related to the use of force filed against Defendants for that same time period"; Defendants' medical and mental health records; and "approximately 33" non-party witness depositions. *Id.* at 10-11, 13-17.  Specifically, Magistrate Judge Dancks concluded that "requiring Defendants to conduct a search for such records encompassing a period of 15 years would be overly burdensome, time-consuming, and not proportional to the needs of the case." *Id.* at 10.  As to Defendants' medical and mental health records, Magistrate Judge Dancks stated that there are security concerns in producing such documents to an incarcerated person, Plaintiff did not provide a time limitation on his request, and he failed to establish the relevance of the request. *See id.* at 13-15.  Magistrate Judge Dancks also denied Plaintiff's request for "an order directing Defendants' counsel to accept his written deposition questions for multiple non-party witnesses employed by DOCCS and to have DOCCS appoint a stenographer to administer the oath and take these depositions." *Id.* at 15.  She denied Plaintiff's request because he did not file any proposed subpoenas and failed to comply with Rule 31 of the Federal Rules of Civil Procedure. *See id.* at 15-17.

In his appeal, Plaintiff argues that he is entitled to prove his case through extrinsic evidence of similar circumstances involving excessive force. *See* Dkt. No. 205 at 10-11.  Plaintiff contends that "[D]efendants through his Attorney as Assistant NY Attorney General has the

practical ability to acquire from DOCCS many of the documents requested by Plaintiff." *Id.* at 17. Plaintiff states that Defendants production of logs books, attendance records, Plaintiff's "rapsheet," and Plaintiff's medical file demonstrates their ability to produce the records he requests. *Id.* As to Defendants' medical and mental health records, Plaintiff argues Defendants failed to produce a privilege log such that any privilege is waived. *See id.* at 14. Plaintiff also claims that the records are relevant because Defendant Ashline put his mental health at issue when he testified during his deposition that he was in the Army and "[i]t is a well know[n] FACT, that many Army veterans come back from the war with mental health issues." *Id.* Plaintiff asserts that defendants have been named in multiple civil lawsuits, which "heightens the probability of existence of mental health/substance abuse records relevant of the proportionally high representable, wanton sadistic, malicious misconduct of Defendants in Plaintiff['s] [] case." *Id.* at 14. Finally, as to the depositions of non-party witnesses, Plaintiff contends a local notary is a public officer who could administer an oath and that he tried to establish a plan for conducting the depositions, but his submission was stricken from the docket. *See id.* at 19.

### a. *Reports Drafted by Defendants and Grievances Filed by Other Incarcerated Individuals Against Defendants*

In response to Plaintiff's motion to compel, Defendants submitted a declaration from Marat Shkolnik, an Associate Counsel with the New York State Department of Corrections and Community Supervision. *See* Dkt. No. 179-11. In the declaration, Attorney Shkolnik "noted that Unusual Incident, Use of Force, and Misbehavior reports are cataloged by incarcerated individual rather than the involved staff members. These records are maintained within correctional facilities in which they were created." *Id.* at ¶ 14. The following was also affirmed:

19

> The manner in which Unusual Incident, Use of Force, and Misbehavior reports are cataloged does not allow for a practical method of identifying and retrieving the underlying records that may be responsive to this request. Such an undertaking would cause an administrative burden on facility staff, requiring members to examine the files of every incarcerated individual housed at all relevant facilities during the relevant period, extract the relevant portions, unbind the physical packets, make copies, reassemble the packets as originally maintained, and review the contents to flag for security and privacy information contained within that should be redacted. This would require a detailed and individualized review of thousands of incarcerated individual files.

*Id.* at ¶ 15. Attorney Shkolnik affirmed that "security staff members may be reassigned to different correctional facilities based on the needs of DOCCS and available staffing resources. As a result, individual staff members may have been assigned to several different facilities from 2009 to 2024." *Id.* at ¶ 16. " Moreover, several correctional facilities have been closed between from 2009 to 2024. The records that would have been maintained by the closed facilities in the normal course have been dispersed to designated operational facilities throughout the State that have storage space." *Id.*

"'[T]he party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden [or] expense . . . bears the burden of proving the discovery is in fact . . . unduly burdensome and/or expensive.'" *Black Love Resists In the Rust by & through Soto v. City of Buffalo, N.Y.*, 334 F.R.D. 23, 28 (W.D.N.Y. 2019) (quoting *Citizens Union of New York v. Attorney General of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)).

In Plaintiff's appeal, he relies on *Gross v. Lunduski*, 304 F.R.D. 136 (W.D.N.Y. 2014) to argue that his request is not unduly burdensome. *See* Dkt. No. 205 at 3, 16. In *Gross*, the plaintiff requested Unusual Incident Reports related to investigative "reports involving [the

d]efendant or containing any statements of [the d]efendant, covering the past 15 years." *Gross*, 304 F.R.D. at 150. The defendant argued that the grievances were first "filed by the complaining inmate's name, not that of the officer against whom the grievance is directed" and then "further subdivided according to '50 different codes depending on the type of grievance raised,' *i.e.*, medical care, harassment, use of force, etc. . . . Thus, . . . to search and retrieve any grievances directed to Defendant would require significant manpower to search all such inmate grievances on file with DOCCS." *Id.* (citation omitted). Prior to the district court rendering its decision, the plaintiff "agreed to limit [the] request for grievances to a period of four years prior to the alleged assault . . . ." *Id.*

The *Gross* court noted that the defendants' declaration did not include a "statement specifically addressing the amount of time and manpower that would be reasonably required to review the more limited number of grievances for staff conduct needed to respond to [the p]laintiff's modified request limited to the period 2010–2014." *Id.* at 152. Likewise, "the [] [d]eclaration also fail[ed] to provide any statement of the number—actual or estimate—of grievances that would be subject to Plaintiff's limited request, . . ., rendering her estimate that 'hundreds, if not thousands, of hours' would be required to 'cull through' all inmate grievances . . . too generalized . . . ." *Id.* The district court stated that it "fail[ed] to see how requiring DOCCS, acting on behalf of Defendant, to review 'hundreds of grievances' limited to those filed by inmates at Five Points where [the d]efendant was assigned over the past four years and filed by DOCCS as referring to Staff Conduct only would be unduly burdensome given Plaintiff's need for such discovery." *Id.*

*Gross* does not require the Court to conclude that Magistrate Judge Dancks erred in denying Plaintiff's motion to compel. First, Plaintiff's request is not limited by any time

constraint.  Plaintiff requested "Use of Force Reports and Unusual Incident reports defendants endorsed/authored regarding force used or similar patterned acts that bear on their credibility" and asserted that "Misbehavior reports authored by defendants may bear on credibility and impeachment evidence."  Dkt. No. 172-1 at 4.  Without any temporal limitation, Plaintiff's request is not proportional to the needs of this case, which concerns a single use of force incident from 2015.  *See Johnson v. Miller*, No. 9:20-CV-622, 2021 WL 4803647, *2 (N.D.N.Y. Sept. 2, 2021) ("[The] plaintiff's broad and unsupported demands for ten years of complaints, grievances, lawsuits, and disciplinary actions relating to all 16 remaining defendants is overly broad, burdensome, and not proportional to the needs of this particular case").

Second, *Gross* is not binding on this Court or Magistrate Judge Dancks.  "Unlike appellate court decisions, district court decisions are not precedential in the strict sense of the word: they are not binding on other courts or judges—even judges in the same district—in subsequent cases." *Tronox Inc. v. Anadarko Petroleum Corp.*, No. 14-CV-5495, 2025 WL 2242166, *3 (S.D.N.Y. Aug. 6, 2025) (citing *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case")).  The Court agrees with Magistrate Judge Dancks's conclusion that it would be unduly burdensome for Defendants to "search[] for and produc[e] 15 years of records which are not catalogued by the names of DOCCS staff involved . . . ."  Dkt. No. 192 at 11.

However, the Court notes that the burden on DOCCS is a burden of its own making. Attorney Shkolnik declares "that Unusual Incident, Use of Force, and Misbehavior reports are cataloged by incarcerated individual rather than the involved staff members."  Dkt. No. 179-11 at ¶ 14.  However, it is a staff member who writes or completes each of those reports.  In the twenty-

22

first century, it does not seem impractical for those reports to be filed by the incarcerated

individual's name but to also be searchable by author.  Courts have concluded that "'[a] party's

failure to maintain its documents in a searchable manner does not ordinarily justify its invoking

what is, in effect, a self-created burden as an excuse not to produce otherwise relevant

documents.'"  *McDay v. Eckert*, No. 20-CV-233, 2023 WL 12118645, *4 (W.D.N.Y. Aug. 9,

2023) (quoting *Jackson v. Monin*, No. 13-CV-4, 2015 WL 5714243, *5 (W.D.N.Y. Sept. 29,

2015)).  For DOCCS to choose to organize its files in a specific manner and then argue that its

chosen system is not easily searchable such that DOCCS is unable to produce various documents

is a questionable practice.  *See Newman & Assocs. v. J.K. Harris & Co., LLC*, No. 04-CV-9264,

2005 WL 3610140, *1 (S.D.N.Y. Dec. 15, 2005) (noting that although "a party's failure to

maintain its documents in a searchable manner does not ordinarily justify its invoking what is, in

effect, a self-created burden as an excuse not to produce otherwise relevant documents. . . . .  The

apparent breadth of plaintiff's demand, however, raises a serious question as to whether, in

weighing relevance against burden, the court can justifiably direct defendants to provide the

requested information").  The declaration relied on by Defendants is questionable in one other

regard.  The declaration states as follows:

> As an additional layer of complexity, security staff members may be reassigned to different correctional facilities based on the needs of DOCCS and available staffing resources.  As a result, individual staff members may have been assigned to several different facilities from 2009 to 2024. Moreover, several correctional facilities have been closed between from 2009 to 2024.  The records that would have been maintained by the closed facilities in the normal course have  been dispersed to designated operational facilities . . . .

Dkt. No. 179-11 at ¶ 16 .

23

The only "security staff members" Plaintiff was concerned with at the time he filed the motion to compel are the four named Defendants. The declaration does not state whether and where those four individuals were assigned. Likewise, the declaration does not state whether any of the facilities Defendants worked at became one of the closed facilities. It is plausible that the named Defendants never transferred facilities or that they worked at a facility which never closed. The declaration does not state whether and how the alleged "additional layer of complexity" applies to the specific four Defendants named in the action. Dkt. No. 179-11 at ¶ 16. Nevertheless, the Court concludes that Magistrate Judge Dancks's conclusion was not clearly erroneous or a mistake of law in light of the decade-long time frame from which Plaintiff sought the records and the inability of Defendants to easily search for them.

### b. *Medical and Mental Health Records*

The Court entirely agrees with Magistrate Judge Dancks's decision to deny Plaintiff's request for Defendants' medical and mental health records.

"The Court also has 'broad discretion' in determining relevance for discovery purposes." *Doherty v. Bice*, No. 18-CV-10898, 2021 WL 4219696, *1 (S.D.N.Y. Sept. 15, 2021) (quoting *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684, 2019 WL 1517552, *2 (S.D.N.Y. Apr. 8, 2019)). "Under the Federal Rules of Civil Procedure, relevance must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CV-9792, 2015 WL 7871037, *2 (S.D.N.Y. Dec. 3, 2015)) (additional citation and quotation marks omitted).

"The Supreme Court has recognized a broad psychotherapist-patient privilege, holding that 'confidential communications between a licensed psychotherapist and [his or her] patients in

the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.'" *Id.* (quoting *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)). "This privilege is 'rooted in the imperative need for confidence and trust,' as psychotherapy requires an environment 'in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears.'" *Id.* (quoting *Jaffee*, 518 U.S. at 10). "The decision whether to allow discovery into mental health records is therefore one that requires courts to exercise extreme sensitivity, as 'the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.'" *Id.* (citation omitted).

However, "waiver may be implied in circumstances where it is called for in the interests of fairness, including when the party attempts to use the privilege both as a shield and a sword." *Doe v. Sarah Lawrence Coll.*, No. 19-CV-10028, 2021 WL 197132, *4 (S.D.N.Y. Jan. 20, 2021) (quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008), quoting in turn *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)) (additional quotation marks omitted). "'In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim . . . and then shield the underlying communications from scrutiny by the opposing party." *Id.* (citation omitted). "For example, waiver occurs when a plaintiff puts his or her mental or emotional condition at issue in the case, by relying on that condition as an element of his or her claim or defense." *Id.* (citing *Green v. St. Vincent's Med. Ctr.*, 252 F.R.D. 125, 127-28 (D. Conn. 2008); *Kerman v. City of New York*, No. 96-CV-7865, 1997 WL 666261, *3 (S.D.N.Y. Oct. 24, 1997)).

Defendants objected to Plaintiff's request for their mental health records as irrelevant, not proportional to the needs of the case and privileged. *See* Dkt. No. 179-10 at ¶ 6. Plaintiff appears correct that Defendants did not serve a privilege log. In response to Plaintiff's appeal, Defendants

acknowledged Magistrate Judge Dancks's conclusion that "Defendants' mental health records are protected from disclosure by the psychotherapist-patient privilege," but they did not substantively address Plaintiff's challenge to that holding.  Dkt. No. 209 at 8.

"The failure of a party to list a document withheld during the course of discovery on a privileged log, or to provide a privilege log altogether, ordinarily results in a finding that the privilege otherwise asserted as been waived."  *Feacher v. Intercontinental Hotels Grp.*, No. 3:06-CV-0877, 2007 WL 3104329, at *5 (N.D.N.Y. Oct. 22, 2007) (citing *Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 869590, *3 (E.D.N.Y. Mar. 20, 2007) (collecting cases)).  "Consistent with these principles, courts in the Second Circuit have uniformly concluded that '[t]he failure of a party to list a document withheld during the course of discovery on a privileged log . . . ordinarily results in a finding that the privilege otherwise asserted has been waived.'"  *Johannes v. Lasley*, No. 17-CV-3899, 2019 WL 1958310, *4 (E.D.N.Y. May 2, 2019) (quoting *Feacher*, 2007 WL 3104329, at *5).

Plaintiff again relies on the *Gross* case as it relates to this issue.  In *Gross*, the district court concluded that "the requested records may reveal past acts of unjustified aggressive conduct toward inmates by Defendant or, more pertinently, information concerning the alleged assault on Plaintiff as well as for possible impeachment purposes.  Accordingly, the court finds that Plaintiff's requests seek relevant information."  *Gross*, 304 F.R.D. at 161.  As to privilege, the court noted the "[d]efendant has steadfastly refused to serve the required privilege log, [and] provided ambivalent responses to [the p]laintiff regarding the existence of the requested records possibly subject to the asserted privilege arguing that [the p]laintiff had failed to establish such existence and asserting a general lack of relevancy."  *Id.* at 161-62.  The *Gross* court concluded that the defendant has waived the privilege and ordered the defendant to "file a statement that any

26

mental health records subject to Plaintiff's request do not exist, or produce such records." *Id.* at 163.

The decision in *Gross* is applicable to the issue before the Court. However, as explained, it is not binding on this Court. *See Tronox Inc.*, 2025 WL 2242166, at *3. The Court will not find that Magistrate Judge Dancks committed clear error because her conclusions are different from those reached in the *Gross* decision. Importantly, the Court has not found any other district court opinion in this Circuit stating that mental health records of a defendant are relevant when the Plaintiff alleges an unprovoked physical attack. Plaintiff did not present any case law to support his assertion that a defendant's military experience automatically equates to that individual having emotional regulation issues that would cause an alleged assault.

On the other hand, because Defendants asserted a privilege, they should have produced a privilege log. *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y.), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 Fed. Appx. 393 (2d Cir. 2010) (summary order) ("[T]he starting position is that the privilege log must be served with the objections or motion to quash and that the failure to do so may result in waiver of the privilege claims"). However, the Court finds no clear error in Magistrate Judge Danck's decision where neither parties' mental health has been placed at issue and case law does not support requiring mental health records to be produced where an act of unprovoked violence is alleged.

### c. *Non-Party Depositions*

In his motion to compel, "Plaintiff request[ed] the court issue subpoenas for attendance to these non party witnesses . . . to respond to witness depositions." Dkt. No. 174 at 17. Plaintiff stated that "DOCCS could appoint an officer to conduct that deposition by administering the oath for written depositions posed by Plaintiff to their employee non party witnesses." *Id.*

27

Magistrate Judge Dancks denied Plaintiff's motion because he did not limit his request to ten non-party witnesses, he did not explain what relevant information was possessed by each potential witness, he did not provide the subpoenas he wished for the U.S. Marshals to serve, and he did not provide for a plan to obtain and pay for the depositions. *See* Dkt. No. 192 at 15-17. The Court finds no clear error in these statements and the conclusion to deny Plaintiff's request.

"Rule 31 of the Federal Rules of Civil Procedure provides that 'a party may, by written questions, depose . . . a party, without leave of court,' except in certain limited circumstances." *Nova v. Smith*, No. 9:19-CV-72, 2020 WL 13855600, *1 (N.D.N.Y. Apr. 7, 2020) (quoting FED. R. CIV. P. 31(a)(1), (2)). "The Rule requires that an officer record the deposition and certify it." *Id.* (citing Fed. R. Civ. P. 31(b); 30(b)(5), (c)(3)). The Rule also states that "[a] party must obtain leave of court . . . if the parties have not stipulated to the deposition and . . . the deposition would result in more than 10 depositions being taken under this rule or Rule 30 by the plaintiffs, or by the defendants, or by the third-party defendants[.]" FED. R. CIV. P. 31(a)(2).

"'Pursuant to 28 U.S.C. § 1915(a), [a p]laintiff's *in forma pauperis* status entitles him to . . . free service of process by United States Marshals, however, it does not entitle him to waiver of witness fees, mileage or deposition officer fees.'" *Woodward v. Mullah*, No. 08-CV-463, 2010 WL 1848495, *9 (W.D.N.Y. Feb. 22, 2010), *R. & R. adopted*, No. 08-CV-463, 2010 WL 1848493 (W.D.N.Y. May 5, 2010) (quoting *Jackson v. Woodford*, 05-CV-513, 2007 WL 2580566, *1 (S.D. Cal. Aug. 17, 2007)); *see also* 28 U.S.C. § 1915(d); *Murray v. Palmer*, 9:03-CV-1010, 2006 WL 2516485, *4 (N.D.N.Y. Aug. 29, 2006) ( "[A] litigant proceeding in forma pauperis does not have a right to a waiver of (1) the cost of a deposition stenographer, (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal Rules of Civil Procedure, or (3) the copying cost of any deposition

transcripts").  "Given these logistical and financial realities, many incarcerated pro se plaintiffs utilize other devices such as interrogatories, deposition by written questions, or requests for admissions to obtain needed discovery." *Fowler v. Fischer*, No. 13-CV-6546, 2017 WL 1194377, *1 (W.D.N.Y. Mar. 30, 2017) (citing *Kramer v. City of New Kensington*, No. 13-CV-606, 2016 WL 406284, *2 (W.D. Pa. Feb. 3, 2016) ("In light of the expense of oral depositions and logistical difficulties presented to an inmate proceeding *pro se*, it is often preferable for pro se inmates to seek discovery through depositions by written questions pursuant to Rule 31 of the Federal Rules of Civil Procedure")).  However, courts have denied a *pro se* plaintiff's request to issue subpoenas where the plaintiff failed to provide a clerk of the court with the subpoenas or explain why the subpoenas were necessary to litigate the case.  *See Richard v. New York City Dep't of Educ.*, No. 16-CV-957, 2022 WL 4273849, *1 (E.D.N.Y. Sept. 15, 2022) (collecting cases).

Plaintiff argues that Magistrate Judge Dancks erred by striking the reply he filed in further support of his motion to compel.  *See* Dkt. Nos. 182, 183, 205.  However, Magistrate Judge Dancks correctly cited the Court's Local Rules which state that a reply is not permitted for non-dispositive motions without the Court's permission.  *See* Dkt. No. 183; *see also* N.D.N.Y. L.R. 7.1(a)(2).  Plaintiff never sought Magistrate Judge Dancks's permission to file a reply; therefore, she appropriately struck his reply from the docket.

Plaintiff contends he tried to "clarify his proposed plan to address the methods of recording these numerous depositions, and identify an officer to conduct them and how the costs of these written depositions will be paid . . . ."  Dkt. No. 205 at 19.  However, in his reply that was appropriately stricken, Plaintiff did not clarify his plan.  Rather, he asked "why[, as a *pro se* Plaintiff, he] need[ed] a stenographer in order for DOCCS the organization to appoint an authorized notary public department officer to receive court issued subpoenas . . . ."  Dkt. No. 182

at 5. Plaintiff asserted that DOCCS should be able to forward his subpoenas and written depositions to the non-party witnesses and the non-party witnesses could get their responses "notarized by DOCCS notary public officer or a notary public office local to such witnesses." *Id.*

Plaintiff's assertions do not establish that Magistrate Judge Dancks committed clear error. Plaintiff has not limited his request for written depositions to ten or less individuals. Likewise, Plaintiff's assertion that DOCCS could request a notary improperly places the onus on Defendants. As pointed out by Magistrate Judge Dancks, Plaintiff never submitted proposed subpoenas for each of the non-party witnesses to effectuate service of his written deposition questions. Although the Court must show liberality to Plaintiff because of his *pro se* status, he is still required to comply with the Federal Rules of Civil Procedure. *See Mayes v. Griffin Hosp.*, No. 3:20-CV-1700, 2021 WL 3795335, *2 (D. Conn. Aug. 26, 2021) ("Plaintiffs, although they are proceeding pro se, are bound to comply with the provisions of the Federal Rules—including those concerning proper service—as well as [a d]istrict's Local Rules").

Plaintiff failed to establish why each of the named witnesses would need to be deposed. When Plaintiff asked Defendants for the non-party witnesses' information, he stated that each witness "possess[ed or] kn[e]w material evidence and/or material knowledge in regards to evidence generated in response to or about the subject incident which is inextricably interwoven to the instance transaction(s)." Dkt. No. 172-2 at 31. Plaintiff listed the "evidence" that the proposed witnesses had knowledge of as intent, the absence of mistake or accident, a common scheme or plan, and "[t]he identity of the persons charged with the commission of constitutional violations at trial and further to the occurrences that are derivative of the 9/9/15 assault . . . against the Plaintiff." *Id.* Such descriptions are not specific enough to establish that the depositions of each individualss was relevant and proportional to the needs of the case. *See Parimal v. Manitex*

30

*Int'l, Inc.*, No. 3:19-CV-1910, 2021 WL 1976311, *2 (D. Conn. May 18, 2021) ("Plaintiff fails to explain how the testimony of all four of these individuals is proper, and would not be unreasonably cumulative or duplicative. 'The mere fact that there are several individuals who may possess relevant information does not necessarily entitle a party to examine each of them'") (quoting *Hertz Corp. v. Accenture LLP*, No. 1:19-CV-3508, 2020 WL 1150053, *2 (S.D.N.Y. Mar. 9, 2020)).

Plaintiff filed a motion for reconsideration on Magistrate Judge Dancks's decision to strike his reply from the docket. *See* Dkt. No. 185. Plaintiff argued that, because of his *pro se* status, he is unfamiliar with all of the rules and procedures governing discovery and motion practice. *See id.* Magistrate Judge Dancks denied the motion because Plaintiff's letter did not establish any grounds for reconsideration. *See* Dkt. No. 192 at 17-18.

In Plaintiff's current motion seeking a preliminary injunction, he argues that Magistrate Judge Dancks's denial was improper because he never filed a formal motion for reconsideration, but only a letter. *See* Dkt. No. 195 at 1, 8. Plaintiff's contentions are meritless. As part of his reconsideration request, Plaintiff labeled his filing as a "letter motion." Dkt. No. 185 at 1-2. Magistrate Judge Dancks considered the merits of Plaintiff's filing. *See* Dkt. No. 192 at 17-18. The Court finds no clear error in Magistrate Judge Dancks's denial of Plaintiff's motion for reconsideration because she correctly concluded that Plaintiff did not demonstrate "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 4 (N.D.N.Y. 1995).

31

In sum, the Court finds no clear error in Magistrate Judge Dancks's decisions to deny portions of Plaintiff's motion to compel, to strike his reply, and to deny his request for reconsideration.

## B.    Injunctive Relief

Plaintiff seeks injunctive and declaratory relief "to settle the controversy of this manifest injustice derivative of the Magistrates legal error of facts and law . . . "  Dkt. No. 197 at 1. Plaintiff contends Magistrate Judge Dancks's decision contain numerous instances of clear error and that judgment should be entered against Defendants because they failed to respond to his appeal on the denial of his motion to amend.  *See id.* at 1-8.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A party seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34-35 (2d Cir. 2010)).

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).  "To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one

that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)) (quotation marks omitted). "In order for harm to irreparable, money damages must be unavailable or at least inadequate." *Stagliano v. Herkimer Central Sch. Dist.*, 151 F. Supp. 3d 264, 273 (N.D.N.Y. 2015).

Plaintiff's motion for a preliminary injunction reiterates the arguments he set forth in his appeals. Plaintiff has not established, for all of the reasons set forth, that Magistrate Judge Dancks committed clear error or made any decisions contrary to the law. Plaintiff has also failed to establish irreparable harm from the denial of his discovery motions or appeals because he has the ability to appeal this case after it has been resolved on the merits. Therefore, his request for injunctive relief is denied.

Plaintiff contends judgment should be entered against Defendants for their failure to respond to one of his appeals. *See* Dkt. No. 197 at 1. Defendants argue Plaintiff has failed to establish an entitlement to a declaratory judgment. *See* Dkt. No. 206.

"The Declaratory Judgment Act provides that '[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Silver v. State Farm Mut. Auto. Ins. Co.*, No. 25-CV-1823, 2026 WL 878241, *3 (E.D.N.Y. Mar. 31, 2026) (quoting 28 U.S.C. § 2201(a)). "'It is well established, however, that the Declaratory Judgment Act does not provide an independent cause of action.'" *Id.* (quoting *Garcia v. Nat'l Contractors Ins. Co.*, No. 15-CV-1332, 2015 WL 7016968, *1 (E.D.N.Y. Nov. 12, 2015)); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). "Thus,

. . . plaintiff must assert a 'substantive claim of right' to the declaratory relief he seeks." *Id.*

(quoting *Garcia*, 2015 WL 7016968, at *1).

Plaintiff has not established any legal right to have Defendants respond to his appeal.

Pursuant to Local Rule 7.1(a)(3),

> [w]here a properly filed motion is unopposed and the Court
> determines that the moving party has met its burden to demonstrate
> entitlement to the relief requested therein, the non-moving party's
> failure to file or serve any papers as this Rule requires shall be
> deemed as consent to the granting or denial of the motion, as the
> case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(a)(3). However, Local Rule 7.1 concerns motions, not appeals of magistrate

judge decision. Assuming *arguendo* that Rule does apply to Plaintiff's appeals, he has not

demonstrated an entitled to the relief he seeks such that Defendants' failure to respond to one of

the appeals is inconsequential. Plaintiff has therefore failed to establish an entitlement to

declaratory relief concerning the same and his motion is denied.

## C.      Request to Correct Clerical Errors

Plaintiff filed a letter seeking to correct a "clerical error" in one of this Court's decisions.

*See* Dkt. Nos. 215. Plaintiff filed a letter on February 4, 2026, in which he sought "Entry of

Default under FRCP 55(a)." Dkt. No. 211. The Clerk of the Court docketed the filing as a Letter

Motion for "default judgment." *Id.* Plaintiff filed another document in support of his request for

Entry of Default pursuant to Federal Rule of Civil Procedure 55(a). *See* Dkt. No. 211. The Clerk

of the Court docketed the letter as a submission in support of Plaintiff's motion requesting

"default judgment." *Id.* Substantively, Plaintiff argued in his letters that Defendants failed to file

an answer to his complaint; therefore, they had defaulted. *See* Dkt. Nos. 211, 212. The Court

denied the letters stating as follows:

> The Court has reviewed plaintiffs request for default, Dkt. Nos. 211, 212, which is denied. There is no amended complaint pending because the Court denied plaintiffs motion for leave to file an amended complaint. *See* Dkt. No. 184. While Plaintiff has appealed that Decision and Order, *see* Dkt. No. 189, the Court has not issued a decision on that appeal. A decision on that appeal will be issued in due course.

Dkt. No. 213.

In Plaintiff's letters seeking to resolve a clerical error, Plaintiff argues his earlier filings sought an entry of default and not default judgment; therefore, his letters were mislabeled. *See* Dkt. No. 215.

"The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a). "Rule 60(a) 'permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission.'" *Pietras v. Bd. of Fire Comm'rs*, 94-CV-673, 2009 WL 1797135, *7 (E.D.N.Y. June 24, 2009) (quoting *In re Marc Rich & Co. A.G.*, 739 F.2d 834, 836 (2d Cir. 1984)). "Thus, '[a] motion under Rule 60(a) is available only to correct a judgment for the purpose of reflecting accurately a decision that the court actually made.'" *Id.* (quoting *Hodge v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001)).

"The Second Circuit has explained that the 'heart of the distinction between an error that is correctable under Rule 60(a) and one that is not is that a correction under Rule 60(a) cannot alter the substantive rights of the parties . . . .'" *Id.* (quoting *Dudley ex rel. Estate of Patton v. Penn-America, Ins. Co.*, 313 F.3d 662, 675 (2d Cir. 2002)). "Rule 60(a) 'is not meant to provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized.'" *Id.* (quoting *Peyser v. Searle Blatt & Co., Ltd.*, 2003 WL 1610772, *1 (S.D.N.Y. Mar. 24, 2003)).

35

To the extent Plaintiff requested an Entry of Default pursuant to Rule 55(a) and the Clerk of the Court labeled his filings as requests for default judgment, which is relief pursuant to Rule 55(b), the Court will correct the docket.[1]  However, the Court finds no errors in the substance of previous determination.  Defendants filed an answer to the amended complaint on May 1, 2023. *See* Dkt. No. 85.  Magistrate Judge Dancks denied Plaintiff's request to file the proposed second amended complaint pleading.  As explained, Plaintiff is not entitled to any judgment in his favor based on Defendants' failure to respond to Plaintiff's appeal of that decision.

## D.    Request for Leave to Appeal

Plaintiff also seeks leave to appeal the Court's denial of his letter motions, arguing that the Court's Text Order was a final order and that "his claims [must] be tested on the merits . . . ."  Dkt. No. 218 at 3.

"'Under § 1291 of the Judicial Code, federal courts of appeals are empowered to review only final decisions of the district courts.'"  *Amara v. Cigna Corp.*, 53 F.4th 241, 248 (2d Cir. 2022) (quoting *Microsoft Corp. v. Baker*, 582 U.S. 23, 27 (2017), quoting in turn 28 U.S.C. § 1291)).  "Under § 1291, 'a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.'"  *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)).  "Interlocutory orders, like discovery orders, 'typically merge with the judgment for purposes of appellate review.'"  *Id.* (quoting *Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007)).  "Thus, § 1291 generally channels 'all claims of error in[to] a single appeal.'"  *Id.* (quoting *Ritzen Grp., Inc. v.*

---

[1] Plaintiff filed a letter requesting to correct a clerical mistake in one of his own filings.  *See* Dkt. No. 220.  Plaintiff states that he referenced the wrong statute in his reply in further support of his appeal on the motion to compel.  *See id.*  The Court denies Plaintiff's request to correct the mistake such that Plaintiff will not be permitted to re-file anything.  However, the Court has fully considered Plaintif's correction in ruling on the pending matters.

*Jackson Masonry, LLC*, 589 U.S. 25, 38 (2020)); *see also Bey v. City of New York*, 999 F.3d 157, 163 (2d Cir. 2021) ("Generally, a final decision is one 'that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment'") (quoting *Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005)).

The Court's Text Order denying Plaintiff's request for default is not a final appealable decision. It did not end the case. It did not conclusively decide a single merits-based issue. Rather, the denial permitted the case to continue on the merits. Therefore, it is not ripe for appeal. *See Weaver v. Schiavo*, 750 Fed. Appx. 59, 60 (2d Cir. 2019) (summary order) ("We lack jurisdiction to consider an interlocutory appeal from the denial of a motion for default judgment") (citing *In re Wills Lines, Inc.*, 227 F.2d 509, 511 (2d Cir. 1955)). ""The collateral order doctrine . . . is a judicially created exception to the final decision principle; it allows immediate appeal from orders that are collateral to the merits of the litigation and cannot be adequately reviewed after final judgment.'" *In re Decor Holdings, Inc.*, 86 F.4th 1021, 1026 (2d Cir. 2023) (quoting *Germain v. Conn. Nat'l Bank*, 930 F.2d 1038, 1039-40 (2d Cir. 1991)). The Second Circuit has stated that "there is no question that a district court's vacatur of a default judgment is reviewable on appeal from a final judgment." *Id.*

Additionally, Section 1292(b) "allows permissive appeals of non-final interlocutory orders that involve (1) a controlling question of law over which there is (2) a substantial ground for difference of opinion and which (3) will likely materially advance the ultimate termination of the litigation." *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F.Supp.2d 139, 161 (E.D.N.Y.1999) (citing 28 U.S.C. § 1292(b)). "District courts have substantial discretion in deciding whether to certify a question for interlocutory appeal[.]" *Marriott v. County of Montgomery*, 426 F.Supp.2d 1, 13 (N.D.N.Y.2006) (citations omitted). Plaintiff has not

established any one of these three grounds in his request to appeal the Court's Text Order. Therefore, his request to appeal is denied.

Finally, the Court notes that Plaintiff asserts his appeal on the order denying his motion to compel conferred jurisdiction on the Second Circuit. *See* Dkt. No. 205 at 23-24. Plaintiff is incorrect. Local Rule 72.1(b) states that "[a]ny party may file an appeal from a Magistrate Judge's decision of a non-dispositive matter to the assigned District Judge by filing with the Clerk and serving upon all parties their appeal from the decision." N.D.N.Y. L.R. 72.1(b). Plaintiff filed his appeal concerning the non-dispositive motion to compel in this Court. He did not file it with the Second Circuit. Regardless, the denial of a motion to compel certain discovery is not a final decision and is, therefore, not appealable to the Second Circuit. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 205-06 (2d Cir. 2012) (concluding that a discovery order that does not terminate a foreign or domestic proceeding is not a "final decision" under § 1291); *Vera v. Republic of Cuba*, 802 F.3d 242, 246 (2d Cir. 2015) ("[U]nder traditional finality principles, a district court's decision to compel compliance with a subpoena or to deny a motion to quash a subpoena is generally not a 'final decision' and therefore is not immediately appealable").

**E.    Request for Leave to File a Motion for Sanctions**[2]

On April 27, 2026, Plaintiff filed a letter seeking permission to file a motion for sanctions related to discovery. *See* Dkt. No. 225. Plaintiff asserts Defendants "withheld and delayed disclosure" of discovery materials until after he filed his motion to compel. *Id.* at 1. He contends one of the use of force reports was altered by Defendant Murray, and that Defendants expert witness inappropriately relied on the false report. *See id.* at 1, 3. Plaintiff states that Defendants

---

[2] Generally, non-dispositive motions are handled by a magistrate judge. However, for the sake of judicial efficiency in handling Plaintiff's filings, the Court addresses Plaintiff's request in this Memorandum-Decision and Order.

and their attorneys should have known that the lack of video surveillance from the alleged use of force was due to Defendants' fraud and/or concealment. *See id.* at 2.

"Rule 37 governs situations where a party to a civil action fails to cooperate in discovery, and provides for the Court to issue sanctions against such a party." *Xstrata Canada Corp. v. Advanced Recycling Technology, Inc.*, No. 08-CV-1366, 2010 WL 1539722, *2 (N.D.N.Y. Apr. 19, 2010) (citing FED. R. CIV. P. 37). "However, the Second Circuit has consistently recognized that Rule 37 sanctions are applicable in extreme circumstances, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *Kesick v. Ulloa*, No. 10-CV-1248, 2012 WL 2873364, *10 (N.D.N.Y. Jul. 12, 2012) (quoting *Robertson v. Dowbenko*, 443 Fed. Appx. 659, 660 (2d Cir. 2011)) (quotation marks omitted). Dismissal may be imposed "only in extreme circumstances," and "usually after consideration of alternative, less drastic sanctions." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988).

Plaintiff's letter has not established the "extreme circumstances" necessary for imposing sanctions. Insofar as Plaintiff requests to file a motion which would "more thoroughly explain[]" his arguments, the Court denies him leave to file such a motion.

First, Magistrate Judge Dancks issued a decision on June 21, 2024, denying Plaintiff's counseled motion for sanctions related to the lack of video surveillance footage from the alleged use of force incident. *See* Dkt. No. 124. Plaintiff did not seek reconsideration of that decision nor appeal from it, and he has not presented any grounds that would justify doing so. Second, if Plaintiff believes that a particular document has been altered or is missing information, he will be permitted to respond in opposition to any dispositive motion that relies on the document or cross-examine a witness about such document should it be admitted into evidence at the time of trial. Likewise, any challenges to the evidence relied upon by an expert witness can be raised in a

39

dispositive motion or response, or at the time of trial.  Finally, Plaintiff's contention that Defendants did not produce certain discovery until after the motion to compel was decided is not a basis for sanctions.  Defendants objected to Plaintiff's requests, Plaintiff moved to compel the information, Magistrate Judge Dancks granted Plaintiff's requests in part, and Defendants produced the ordered documents.  That is the appropriate process for discovery to proceed. Plaintiff's request for leave to file a motion for sanctions is, therefore, denied.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's appeal (Dkt. No. 189) from the Decision and Order denying his motion to amend is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for a preliminary injunction (Dkt. No. 197) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's appeal (Dkt. No. 205) from the Decision and Order denying his motion to compel is **DENIED**; and the Court further

**ORDERS** that Plaintiff's letter requesting the Court to correct the labeling of his previous filings (Dkt. No. 215) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall amend Docket Numbers 211 and 212 to indicate that Plaintiff requested "Entry of Default" instead of default judgment; and the Court further

**ORDERS** that Plaintiff's letter requesting to correct a clerical error in a letter he previously filed (Dkt. No. 220) is **DENIED**: and the Court further

**ORDERS** that Plaintiff's motion for leave to appeal (Dkt. No. 218) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's letter motion requesting permission to file a motion for sanctions (Dkt. No. 225) is **DENIED**; and the Court further

**ORDERS** that the dispositive motion deadline remains June 30, 2026, and no extensions of that deadline will be considered absent exceptional circumstances; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties accordance with the local rules.

**IT IS SO ORDERED.**

Dated:  May 7, 2026
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

41